Argued December 15, 1978, affirmed in part; reversed in
part and remanded March 19, reconsideration denied April 24,
petition for review denied July 17, 1979, 287 Or 129.

# FRED MEYER, INC., *Petitioner, v.*
# BUREAU OF LABOR, *Respondent.*
## (No. 3-77, CA 11933)

592 P2d 564

[254]

[254-a]

Susan P. Graber, Portland, argued the cause for petitioner. With her on the brief were Harry S. Chandler and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Thornton, Presiding Judge, and Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

This is an employment discrimination case in which the Commissioner of Labor found that petitioner, an employer, had discriminated against a black employe, Hayes, on the basis of his race and color by subjecting him to racial abuse and harassment and by terminating his employment in violation of ORS 659.030(1)(a). The Commissioner's order directed petitioner to pay Hayes $4,000 as compensation for humiliation, ridicule and embarrassment and $388.50 in back pay, to provide a copy of the order to any person inquiring about Hayes' employment, to post a copy of the Commissioner's order in each of petitioner's stores in the state, and to provide a written summary of the order to each of petitioner's employes. In this petition for judicial review pursuant to ORS 659.085 and 183.482,[1] petitioner seeks reversal of each portion of the Commissioner's order.

We take the facts from the undisputed evidence and from the Commissioner's findings, and we accept those inferences of the Commissioner which can reasonably be drawn from the evidence. *Braidwood v. City of Portland,* 24 Or App 477, 480, 546 P2d 777 *rev den* (1976). Hayes, who was 16 years old at the time, was employed as a stockboy by petitioner from May 25, 1972 to July 14, 1972, and from August 20, 1972 to September 16, 1972. The acts of discrimination which are the basis of Hayes' complaint occurred during the first period of employment, when Hayes worked in the

---

[1] ORS 183.482(7) and (8) establish our scope of review:

"(7) Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact. * * *

"(8) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby; or
* * * * *

(d) The order is not supported by substantial evidence in the whole record."

variety department of petitioner's Division store. As stockboy, Hayes unloaded freight, transported goods from stockroom to shelves, swept floors, mixed paints, bagged customer purchases and performed other tasks of a similar nature. His work was supervised by four individuals: Lester Bowman, manager of the department; Larry West, assistant manager; Terry Fetters, third-in-charge; and Tom Bonk, management trainee and fourth-in-charge.[2] These supervisory employes worked various shifts and each was present for only part of the time Hayes was working.

The charges of racial harassment involve Fetters and Bonk. On occasion when Hayes and two white stockboys were working together, Fetters would engage in social conversation with the other stockboys, who would cease work during the conversation. Fetters would then criticize Hayes because the task assigned to all three stockboys was not accomplished quickly enough. Fetters also asked Hayes if he belonged to the Black Panthers and repeated the inquiry on several occasions despite Hayes' negative answer and the absence of any behavior or statement from Hayes which might reasonably prompt such an inquiry. The Commissioner inferred that those inquiries and the differential treatment were intended to embarrass, offend and isolate Hayes because of his race and that they caused him to feel intimidated, isolated and inferior.

The incidents of racial harassment by Bonk were more serious and more numerous. Although it was difficult for the witnesses to be precise about events that transpired approximately five years before the contested case hearing, there is substantial evidence to support the Commissioner's findings about Bonk's racially-based remarks to Hayes. Most of Bonk's comments to Hayes may have been intended to be humorous, but they represented prejudicial stereotypes and

---

[2] Only Bowman and West had authority to hire and fire employes; Fetters and Bonk were nonmanagement employes with some supervisory responsibilities and were included in the bargaining unit covered by a collective bargaining agreement.

interpersonal insensitivity, which were embarrassing and humiliating to Hayes. Bonk often asked Hayes if he liked Cadillac automobiles with white sidewall tires and fur upholstery. Affecting a black dialect, Bonk told a number of "Black Sambo" jokes in the presence of Hayes and others and asked Hayes whether he shared Sambo's laziness and food preferences. He called Hayes "Shaft," "Mohammed," and "Uncle Tom" on numerous occasions. Several times when he encountered Hayes in the storeroom or in the store, Bonk affected an exaggerated walk intended as a caricature of black persons' manner of walking. He commented on the texture and appearance of Hayes' hair at various times and, when Hayes was mixing paint, he compared the color of the paint to Hayes' skin color. Finally, on one occasion when a white female employe who was married to a black man entered the storeroom while Bonk was criticizing Hayes' performance of a particular job, he asked her, "How do you beat a nigger?"[3] At no time did Hayes respond to these incidents with joking or do anything to encourage Bonk to continue his racially-based remarks.[4]

Sometime toward the middle of Hayes' first period of employment, West, the assistant manager, overheard Bonk referring to Hayes as "Mohammed." Bonk also informed West that he had told Black Sambo jokes to Hayes and had teased him about Cadillacs. Bonk recited one of the jokes to West, who found it offensive and informed him that such joking was improper. West also admonished Bonk in a similar manner on another occasion, but did not advise his superiors of the problem because he thought his warnings to Bonk were sufficient to stop the abuse. They were not. Hayes testified, and the Commissioner

---

[3] The female employe remembered this phrasing. Hayes testified that Bonk asked, "How do you kill a nigger?"

[4] Bonk also questioned Hayes about how he came to live in a suburban neighborhood, whether he was accepted and comfortable there and at a suburban high school, and talked frequently about Hayes' food preferences. Because of the abundance of other discriminatory incidents, we need not consider whether these inquiries were also motivated by racial prejudice.

found, that Bonk's harassment was more severe at the end of Hayes' initial period of employment than it had been at the beginning or the middle. Based upon Hayes' scant testimony and his own inferences, the Commissioner summarized Hayes' employment situation and its effect on him as follows:

"I find that virtually every contact that the Complainant had with Mr. Bonk, one of his supervisors, amounted to an exposure to Mr. Bonk's pointless racial inquiries, or racial 'humor' and that the distress, humiliation and embarrassment this exposure caused Complainant adversely affected his work performance. I further find that the treatment accorded Complainant by Mr. Fetters, and Mr. Fetters' participation in and knowledge of the treatment accorded to the Complainant by Mr. Bonk, further adversely affected Complainant's work performance."

Hayes' employment at the Division store was terminated by the variety department manager, Bowman, on July 14, 1972. Bowman's decision was based ostensibly on Hayes' immaturity and inefficient performance of his duties; there is no evidence that Bowman was motivated by any racial considerations. He testified that his decision to discharge Hayes was based aproximately half on his own observations of Hayes' work and half on the recommendations of the other three supervisors. The Commissioner inferred that

"* * * [t]wo of these supervisors were motivated, in giving their recommendation, by active considerations of racial prejudice specifically directed at the Complainant. The third knew of some instances of the abuse directed at Complainant and was ineffective in correcting the situation.

"* * * * *

"Any correctly perceived instances of the Complainant's substandard work performance on Mr. Bowman's part which influenced his termination decision were contributed to and caused, at least in part, by the racial abuse and slurs directed at the Complainant. That is to say that, when Mr. Bowman observed the Complainant performing poorly, what

he was in fact observing was the effect of the racial discrimination directed at the Complainant. The abuse and racial slurs were thus substantial factors in regard to Mr. Bowman's decision to terminate Complainant. In short, Complainant was terminated, on or about July 14, 1972, because of his race and color."

Following his discharge, Hayes complained to the union about the circumstances of his termination. The union representative and petitioner arranged for him to be reinstated to a similar position in another Fred Meyer retail store, the Rockwood store. He began working at Rockwood on August 20, 1972, for what was essentially a 30-day trial period. His supervisor at Rockwood, Vern Miller, found him to be a slow worker who did not use good judgment. On September 14, Miller gave Hayes specific criticisms of his job performance and informed him that he would be discharged if his work did not improve to a satisfactory level. Hayes testified that he understood the criticisms, and he acknowledged that his work at Rockwood was "below average or poor."[5] Soon after the consultation with Miller, Hayes decided not to return to work. He testified that "by that time I was sort of fed up with Fred Meyers and I was pretty much discouraged and I just wanted to be through with them basically." He stated that he had become discouraged because of the harassment, jokes and intimidation at the Division store. The evidence is ambiguous as to whether Hayes was discharged by Miller or resigned from the Rockwood job and the Commissioner found that the termination was by mutual consent. After the termination, Hayes returned to school and did not seek employment during that school year or the following summer.

There is no claim or evidence that Hayes was subjected to any racial discrimination during his

---

[5] Hayes made no such admission about his work at the Division store.

employment at the Rockwood store. The Commissioner, however, found that his substandard performance was the result of past discrimination during the first employment period. This inference is not compelled by the evidence; indeed it is barely suggested by it. Because the order draws no legal conclusion from this finding and imposes no liability on the basis of it, we do not consider whether it is supported by substantial evidence.

Hayes filed a complaint with the Civil Rights Division of the Oregon Bureau of Labor on August 21, 1972. The Division investigated the complaint, determined that there was substantial evidence to support the claim of discrimination, and attempted to conciliate the matter without success. A contested case hearing was not held until May, 1977. Briefs were submitted and proposed findings were prepared, and in July, 1978, the Commissioner entered the findings described above and ordered the remedies summarized in the first paragraph of this opinion. Additional facts and portions of the order are set out below as they relate to petitioner's various assignments of error.

## Award of Damages for Humiliation

Petitioner attacks the Commissioner's award of $4,000 compensation for humiliation on several grounds. The first is that the Commissioner has no statutory authority to make such an award.

ORS 659.060 authorizes the Commissioner to issue an appropriate cease and desist order against an employer found to have engaged in an unlawful employment practice.[6] ORS 659.010(2)(a) provides:

[6] Former ORS 659.030(1) provided:
"For the purposes of ORS 659.010 to 659.110, it is an unlawful employment practice:
"(1) For an employer, because of the race, religion, color, sex or national origin of any individual or of any other person with whom the individual associates, to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. * * *"

" 'Cease and desist order' means an order signed by the commissioner, taking into account the subject matter of the complaint and the need to supervise compliance with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring him to:

(a) Perform an act or series of acts designated therein and reasonably calculated to carry out the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, eliminate the effects of an unlawful practice found, and protect the rights of the complainant and other persons similarly situated * * *."

ORS 659.022 states that some of the purposes of the civil rights statutes at issue in this case are "to insure human dignity of all people within this state, and protect their health, safety and morals from the consequences of intergroup hostility, tensions and practices of discrimination." The legislature intended to provide "[a]n adequate remedy for persons aggrieved by certain acts of discrimination because of race, religion, color, sex, marital status or national origin or unreasonable acts of discrimination in employment based upon age." ORS 659.022(2).

In *Williams v. Joyce,* 4 Or App 482, 504, 479 P2d 513 *rev den* (1971), this court held that the Commissioner has authority to award damages as compensation for humiliation caused by racial discrimination:

"Racial discrimination [in housing as] here practiced by the petitioners is made an unlawful practice in Oregon by ORS ch 659. Oregon courts recognize that mental suffering may be the direct, proximate and natural result of an infringement of a legal right. *Hinish v. Meier & Frank Co.,* 166 Or 482, 506, 113 P2d 438, 138 ALR 1 (1941). As shown above, other state courts have recognized mental anguish as one of the effects of racial discrimination. ORS 659.010(2) gives the Commissioner of Labor the right to issue an order which requires an individual to perform an act reasonably calculated to carry out the purposes of ORS 659.010 to 659.110, one of which is to insure human dignity, and to eliminate the effects of an

[261]

unlawful practice found. In construing the word 'effect' we must give the word its obvious meaning. In the context of the statute, mental anguish, as well as pecuniary loss, can be an effect of racial discrimination. The award of damages to compensate for a victim's humiliation is an act reasonably calculated to eliminate the effects of the discrimination."

Petitioner attempts to distinguish *Williams* on the ground that it concerned racial discrimination in housing rather than employment. That is a distinction without a difference; the principles and reasoning in *Williams* are equally applicable to this case. In *School District No. 1 v. Nilsen,* 271 Or 461, 484-86, 534 P2d 1135 (1975), the Supreme Court considered an award of damages for humiliation caused by employment discrimination based on sex. Although the Court reversed the damage award because it found no evidence of humiliation, it cited *Williams* and implied that damages would have been an appropriate remedy if there had been such evidence.

■  Petitioner also urges us to overrule the holding in *Williams v. Joyce.* For support, petitioner refers to the legislative history of the 1977 amendments to ORS ch 659.[7] The statements of legislators in 1977 are not probative of the legislative intent of the statutes in effect in 1972, when the discrimination in this case occurred. Moreover, we assume the legislature to have been aware of this court's interpretation of the statutory term "effect" in *Williams v. Joyce* when it amended related statutes in 1977, yet it did not amend ORS 659.010(2) to except damage awards for humiliation. Whatever may have been the prospective effect of the 1977 amendments, they do not reflect on the effect of the statutes at the time of the acts in this case.

■  Petitioner also contends that the Commissioner's award of damages is unconstitutional because it violates petitioner's right to a jury trial guaranteed by Art

---

[7] The amendments apply only to discriminatory acts occurring after the effective date of the 1977 amendments. 1977 Or Laws, ch 453, § 7.

[262]

I, § 17, and Art VII, § 3 of the Oregon Constitution.[8] This argument was considered and rejected in *Williams v. Joyce,* 4 Or App at 500-502, and we have no reason to reconsider that holding.

Petitioner's final argument against the Commissioner's authority to award damages in this case is that the Commissioner must first promulgate rules articulating standards governing such awards so that the statute can be applied with consistency and the parties will have guidance as to what proof is required and appropriate. We disagree. First, the applicable statutes do not mandate rulemaking. Second, we recognized in *Williams v. Joyce,* 4 Or App at 504, that ORS 659.022(2) clearly grants the Commissioner authority to fashion a remedy adequate to eliminate the effects of discrimination. The wide variety of forms which discrimination may take, the broad range of circumstances in which it occurs, and the differences in the impacts it has on particular individuals require that the Commissioner's remedial powers be broad and flexible. In *McCann v. OLCC,* 27 Or App 487, 493, 446 P2d 973 (1976) *rev den* (1977), we stated:

> "Where the adoption of precise pre-decisional criteria would be unfeasible, we have required instead that an agency demonstrate in its order a rational relationship between the facts and the legal conclusions upon which it acts in each case."

Accordingly, rulemaking is not a prerequisite to the Commissioner's award of damages, but in the absence of a rule the order must contain substantial reasoning relating the facts found, the remedies ordered, and the statutory purpose.

The Commissioner found that

> "As a consequence of [the racial harassment by Bonk and Fetters and the failure of West to use

---

[8] "In all civil cases the right of trial by jury shall remain inviolate." Or Const, Art I, § 17.

"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved * * *." Or Const, Art VII, § 3.

[263]

effective means to correct that situation], the Complainant suffered humiliation, distress, embarrassment and anxiety, as well as a loss of self-confidence."

The order also outlines the rationale for the award of damages:

"In this present case, as the findings reflect, there is an abundance of evidence concerning ridicule, embarrassment and humiliation meted out to the Complainant by [petitioner]. This situation was particularly egregious in view of Hayes' youth. That a young man should encounter such an environment in his initial venture in the world of work is outrageous. In circumstances such as this an award for humiliation, mental distress, etc., is not only appropriate but is indeed contemplated by the legislature of the State of Oregon."

■ As set out above, there is substantial evidence that Hayes was subject to continual racial harassment during his first period of employment. The harassment and the failure of the assistant manager to rectify it constitute a violation of ORS 659.030(1)(a), which provides that it is an unlawful employment practice for an employer to discriminate on the basis of race in "conditions or privileges of employment." Under ORS 659.010(2), *Williams v. Joyce,* 4 Or App at 504, and *School District No. 1 v. Nilsen,* 271 Or at 486, the Commissioner is authorized to award compensatory damages if the evidence is sufficient to support his finding that Hayes suffered humiliation as a result of the harassment. We conclude that the internal reasoning is sufficient under *McCann* to support the award without a rule.

■ Petitioner argues that the "record is nearly barren of evidence concerning the nature and extent of Hayes' injury, pain, or suffering," and that therefore the award of $4,000 damages cannot be sustained. To the contrary, although the record is scant on this point, it is not devoid of substantial evidence to support the award. Hayes testified that he felt embarrassed and

belittled by the discriminatory treatment, that it interfered with his job performance at the Division store, and that eventually he became discouraged and "fed up" with the harassments, jokes and intimidations. Moreover, the evidence of harassment is so substantial that the inference is reasonable that Hayes suffered humiliation as a consequence. In *School District No. 1 v. Nilsen,* 271 Or at 486, the Supreme Court noted that the damages for humiliation that were approved in *Williams v. Joyce* were "proper in such a case because of the indignity visited from the inference that black people are inferior." Substantial evidence and reasoning supports the Commissioner's finding that on-the-job racial discrimination caused Hayes to suffer humiliation, distress, embarrassment and anxiety.

■ Finally, petitioner contends that the amount of the damage award, $4,000, is not substantiated by the evidence. We find and are cited to no helpful authority on the scope of judicial review of an administrative award of money compensation for an unquantified compensable condition. Unlike judicial cases in which there is no review for excessiveness of damages, *cf. Van Lom v. Schneiderman,* 187 Or 89, 100-105, 210 P2d 461, 11 ALR2d 1195 (1949), the scope of judicial review of administrative action is regulated by the Administrative Procedures Act, ORS chapter 183. The fundamental question underlying the validity of any administrative action is whether it may be reasonably considered to advance a statutory purpose. Under ORS 659.010(2)(a), the purpose of the Commissioner's authority to issue a cease and desist order is to remove the effects of unlawful discrimination. *See also* ORS 659.022(2).

■ Here, there is substantial evidence in Hayes' testimony and reasoning in the order to support the finding that Hayes was humiliated, embarrassed and belittled by the racial harassment. The discrimination was not trivial, but consisted of a continuing pattern of racial harassment which was intended to and did cause

[265]

Hayes embarrassment and distress. The order explains the award of damages by emphasizing Hayes' youth and the fact that this was his first employment experience. Given the seriousness of the discrimination and the evidence that it had a significant effect on Hayes, we conclude that the award of $4,000 compensation for humiliation and mental distress falls within the bounds of the Commissioner's discretion under his authority to remove the effects of the unlawful discrimination.

## Back Pay

The Commissioner ordered petitioner to pay Hayes $388.50, representing back pay for the period between his discharge from the Division store and his reinstatement at the Rockwood store. The amount was computed at the rate of 37 hours per week at $2.10 per hour for the five weeks between the two periods of employment. Petitioner challenges this portion of the order on two grounds.

The first contention is that the back pay award is not justified because there is no substantial evidence to support the Commissioner's conclusion that Hayes was discharged because of his race. For clarity, we reiterate the substance of the Commissioner's findings regarding the discharge. The recommendations of the three other supervisors constituted half of the basis for the manager's decision to discharge Hayes. The Commissioner found that "two of these supervisors were motivated, in giving their recommendation, by active considerations of racial prejudice specifically directed at the Complainant." Although there is no direct evidence to support that finding, there is ample evidence that those two supervisors were prejudiced against Hayes because of his race. It is a reasonable inference that their prejudice affected their evaluations of Hayes' job performance. Moreover, his job performance was found to have been affected by the treatment he received. The Commissioner found that

"[a]ny correctly perceived instances of the Complainant's substandard work performance [which influenced the manager's] termination decision were contributed to and caused, at least in part, by the racial abuse and slurs directed at the Complainant." This finding is supported by Hayes' testimony that Bonk interrupted his work with the racial jokes and that the differential treatment he received belittled him and affected his performance.

The amount of the back pay award was calculated on the basis of the average number of hours Hayes worked during the last two weeks of his tenure at the Division store, which was 37 hours per week. Petitioner asserts that the calculation should be based on the average number of hours worked weekly over the entire eight-week period of the first employment period. To the contrary, it is reasonable for the Commissioner to have inferred that Hayes' continued employment would be for approximately the same number of hours he worked during the more recent period of employment rather than for the average weekly hours of his entire term.

### Other Remedies

In addition to the monetary awards, the Commissioner ordered petitioner to (1) make a copy of the Commissioner's order a permanent part of Hayes' personnel record, to be furnished to anyone inquiring about his employment with Fred Meyer, (2) to post a copy of the order for 120 days in each Fred Meyer store in the state of Oregon in places frequented by all Fred Meyer employes, and (3) to provide each employe with a summary of the order. Petitioner contends that these portions of the order are "retaliatory, arbitrary, unlawful and not supported by substantial evidence."

The statutes authorize the Commissioner to issue an "appropriate cease and desist order," which may, among other things, require a respondent to perform acts designed to eliminate the effects of an unlawful practice and protect the rights of the complainant and

[267]

other persons similarly situated. The order should take into account the subject matter of the complaint and the need to supervise compliance with the order. ORS 659.060(3); 659.010(2). These statutes grant the Commissioner broad authority to enforce the statutory policy against employment discrimination, but they are not a license to be arbitrary. Regarding these same statutes, the Supreme Court stated in *School District No. 1 v. Nilsen,* 271 Or at 495, "that the legislature did not intend to vest in the Commissioner completely unfettered discretion to the extent that the Commissioner could issue an order without some showing of necessity therefor."

The scope of delegated discretion is determined ultimately by statute. Accordingly, our review of the requirements of the order that petitioner perform remedial acts is to determine whether there is a reasonable basis upon which to conclude that each ordered remedial act will tend to accomplish a statutory purpose. The basis may be apparent simply from looking at the facts and the order, *e.g.,* compensation to remove mental anguish as an effect of discrimination, as above. Sometimes it is not apparent, however, and in such cases we look to the order for a statement of a statutory basis for the remedy. *Cf. McCann v. OLCC.*[9] We examine these three remedial orders in that light.

The reasonable basis for requiring petitioner to include a copy of the Commissioner's order in Hayes' personnel record is apparent. If a potential employer asks Hayes for his record of employment with Fred Meyer, that record should reflect that his discharge was found to be based on racial discrimination rather than simply for poor performance. This portion of the order is a reasonable means of eliminating the effects

---

[9] The requirement of remedial acts is to be distinguished in this regard from the imposition of sanctions. *Cf. Mary's Fine Foods v. OLCC,* 30 Or App 435, 440, 567 P2d 146 (1977).

of Hayes' unlawful discharge, and it imposes a minimal burden on petitioner.[10]

The portions of the order requiring petitioner to post copies of the order in all its Oregon stores and to distribute summaries to all its employes bear no apparent reasonable relationship to the accomplishment of statutory purposes based on unlawful employment practice in this case, *See School District No. 1 v. Nilsen,* 271 Or at 495, and none is expressed in the order. The Commissioner's powers are remedial, not punitive. The posting and distribution requirements are obviously not intended to remove the effects of the discrimination against Hayes. They cannot be justified as protection for similarly-situated persons because there is no finding that petitioner had discriminated other than against Hayes. The acts of discrimination by two nonmanagerial supervisors against Hayes, which the efforts of the assistant manager were insufficient to correct, are not of a nature or magnitude which would imply a discriminatory policy or pattern of practice on the part of petitioner. Nor does the order attempt to justify these remedies as reasonably necessary for assurance of future compliance. In short, there is no finding or reasoning in the order or evidence in the record which would support such finding or reasoning to indicate that the relatively punitive requirements imposed by the last two portions of the Commissioner's order are designed to advance the statutory purposes which are delegated to the Commissioner for enforcement.

### Conclusion

By way of summary: We affirm the award of damages for humiliation on the authority of *Williams v. Joyce* and the back pay award as a reasonable remedy for a discharge based on racial discrimination; we also affirm the requirement that petitioner place a

---

[10] Petitioner's assertion that Hayes has never sought a recommendation from the company is irrelevant. If he does, it is reasonable to require that the personnel record reflect the circumstances of his discharge; if he does not, petitioner is not harmed by this portion of the order.

copy of the Commissioner's order in Hayes' employment record, but, in the absence of a statement of reasons in the order, we reverse the portions of the order requiring petitioner to post copies of the order in its store and provide summaries of the order to each of its employes.

The case is remanded to the Commissioner of Labor for issuance of a new order consistent with this opinion.

Affirmed in part; reversed in part and remanded.

**BUTTLER, J.,** specially concurring.

I concur in the opinion of the majority because the questions raised by petitioner with respect to the award of damages were disposed of in *Williams v. Joyce,* 4 Or App 482, 479 P2d 513, 40 ALR3d 1272, *rev den* (1971), and this court's interpretation of the Act was approved in *School District No. 1 v. Nilsen,* 271 Or 461, 534 P2d 1135 (1975). The question is whether the legislature in 1977 (Oregon Laws 1977, Ch 453, § 7) has sent us the message that both we and the Supreme Court were wrong in the interpretation of the Act. The answer must come from the Supreme Court.

Specifically, I agree that the evidence of discrimination in the form of harassment was "so substantial that the inference is reasonable that Hayes suffered humiliation as a consequence." (39 Or App at 265) It would take an unusually calloused person not to feel humiliation as a result of the conduct complained of. Further, the award of $4,000, based upon my own subjective judgment, is justified, and may not be adequate.

But therein lies the rub. The majority states that it has found no "helpful authority on the scope of judicial review of an administrative award of money compensation for an unquantified compensable condition." (39 Or App at 265.) The reason it has found none seems apparent: the proper forum for

assessing damages is a court of law where the parties are entitled to have a jury of their peers make the determination, Art I, § 17, and Art VII, § 3, Oregon Constitution, and not have them fixed by an advocate charged with enforcing the Act. The majority resolves the problem by concluding that any administrative action is valid if "it may be reasonably considered to advance a statutory purpose." (39 Or App at 265.) It follows, then, that the award fits that test because "it removes the effects of unlawful discrimination."

Using that test, I can think of no more appropriate administrative action to remove the effects of discrimination than an award of punitive damages which, historically, are designed to punish and deter the offender, and others similarly situated, from future wrongful conduct which violates societal interests. *See Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 435 P2d 306 (1967), 27 ALR3d 1268 (1969); *McGill v. Huling Buick Company,* 259 Or 413, 487 P2d 656 (1971). In determining such damages the wealth and financial condition of the offender is relevant. *Phelan v. Beswick,* 213 Or 612, 326 P2d 1034 (1958). Are we prepared to uphold an award of $100,000 in punitive damages against a corporation with a net worth of one hundred million dollars? If not, have we construed the Act properly?

It appears that these questions have been answered by the legislature in Oregon Laws 1977, chapter 453, section 7 (ORS 659.121),[1] at least with respect to acts

---

[1] ORS 659.121 (Oregon Laws 1977, ch 453, § 7) provides:

"(1) Any person claiming to be aggrieved by an unlawful employment practice prohibited by ORS 659.024, 659.026, 659.030, 659.410, 659.415 or subsection (1) of 659.425 may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employes with or without back pay. Back pay liability shall not accrue from a date more than two years prior to the filing of a complaint with the Labor Commissioner, pursuant to ORS 659.040, or if no such complaint has first been filed, then, more than two years prior to the filing of the civil suit provided for in ORS 659.040, 659.045,

of discrimination taking place after July 19, 1977, its effective date. The majority, I think, passes off the amendment too glibly: "The statements of legislators in 1977 are not probative of the legislative intent of the statutes in effect in 1972, when the discrimination in this case occurred."

A brief summary of the 1977 amendment is enlightening. Subsection 1 of the new statute permits any person claiming to be aggrieved by an unlawful employment practice prohibited by enumerated sections of ORS chapter 659, (including 659.030 defining all of the unlawful employment practices, including the one involved here) to file a civil *suit* in the circuit court for injunctive relief; it authorizes the court to order such other equitable relief as may be appropriate, including but not limited to reinstatement or the

659.095 and this section. In any suit brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees.

"(2) Any person claiming to be aggrieved by alleged violations of subsection (1) or (2) of ORS 659.033, subsection (2) of 659.425 or ORS 659.430 may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages not to exceed $2,500. The court may provide such equitable relief as it deems appropriate. In any action brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees.

"(3) Where no complaint has been filed pursuant to subsection (1) of ORS 659.040 or subsection (1) of 659.045 and except as otherwise provided herein, the civil suit or action shall be commenced within one year of the occurrence of the alleged unlawful employment practice. Where a complaint has been filed pursuant to subsection (1) of ORS 659.040 or subsection (1) of 659.045 the civil suit or action provided for herein shall be commenced only in accordance with the time limitations provided for in ORS 659.095. The filing of a complaint with the commissioner under subsection (1) of ORS 659.040 or subsection (1) of 659.045 shall not be a condition precedent to the filing of civil suit or action under this section.

"(4) This section shall not be construed to limit or alter in any way the authority or power of the commissioner or to limit or alter in any way any of the rights of an individual complainant until and unless the complainant commences civil suit or action. The filing of a civil suit or action shall constitute both an election of remedies as to the rights of that individual with respect to those matters alleged in the complaint filed with the commissioner, and a waiver with respect to the right to file a complaint with the commissioner pursuant to subsection (1) of ORS 659.040 or subsection (1) of 659.045."

[272]

hiring of employees with or without back pay, and authorizes the award of attorney's fees and costs to the prevailing party. It does not authorize the recovery of damages.

Subsection (2) of the new section authorizes any person claiming to be aggrieved by discrimination in housing,[2] or discrimination against mentally or physically handicapped persons in real estate transactions to file a civil *action* in the circuit court "to recover compensatory damages or $200, whichever is greater, and punitive damages not to exceed $2500. The court may provide such equitable relief as it deems appropriate." It also authorizes the prevailing party to recover attorney's fees and costs.

Subsection (4) of the amendment expressly provides that the filing of a civil proceeding shall constitute both an election of remedies as to the rights of that individual with respect to those matters alleged in the complaint filed with the commissioner, and a waiver with respect to the right to file a complaint with the commissioner pursuant to the act.

It seems clear to me that the new section provides the complainant with an election of remedies, either to pursue the administrative remedy or to file a civil proceeding in the circuit court, and, in either case, compensatory or punitive damages are *only* allowed in a civil action in the circuit court with respect to certain kinds of discrimination, but not those in employment practices.

Assuming this to be the case, it seems to me the legislature has delivered a message that we were wrong in *Williams,* and the Supreme Court was wrong in *Nilsen.* Because I think it is up to the Supreme Court to interpret that message in light of what it said in *Nilsen,* I concur in the majority opinion.

[2] The majority states (39 Or App at 262) that the distinction between discrimination in housing and that in employment is a distinction without a difference. However much I might agree, the legislature has made that distinction, and with a difference.