In the Matter of the Alleged
Unlawful Housing Practices by

SCHIPPOREIT et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent.*

(06-84; CA A43861)

760 P2d 1339

Dale L. Crandall, Salem, argued the cause and filed the brief for petitioners.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Riggs, J., pro tempore.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioners seek review of an order which found that they had committed racial discrimination in violation of ORS 659.033.[1] They were ordered to cease and desist, to pay $12,000 damages for mental distress to the complainant Pearl Hampton and $4,781.31 damages for pecuniary loss and mental distress to the personal representative of the complainant John Cavender. We affirm.

Petitioners own and operate Sunnyview Mobile Home Park in Salem, where they rent and lease residential spaces. Cavender had rented and occupied a space on which he parked his mobile home. In September, 1982, he agreed to sell his home to Hampton, who is black, and to transfer to her his right to rent the space. His rental agreement with petitioners provided that he had to give them 30 days' notice of his intent to sell his home if the purchaser also wanted to become a tenant. When petitioners learned that Cavender was going to sell to a black person, they strictly insisted on the 30-day notice requirement. After Cavender complied with that requirement, Hampton was not given a rental application, even though she repeatedly requested it.

■ Petitioners first argue that the Commissioner lacks authority to award damages as part of a cease and desist order for discrimination in housing. They recognize that we held otherwise in *Williams v. Joyce,* 4 Or App 482, 504, 479 P2d 513, *rev den* (1971), but argue that *Williams* is not controlling because, in 1977, the legislature enacted ORS 659.121(2),[2]

---

[1] ORS 659.033 provides, in part:

"(1) No person shall, because of race, color, sex, marital status, religion or national origin of any person:

"(a) Refuse to sell, lease or rent any real property to a purchaser.

"* * * * *

"(d) Attempt to discourage the sale, rental or lease of any real property to a purchaser."

[2] ORS 659.121(2), as amended since 1977, provides:

"Any person claiming to be aggrieved by alleged violations of ORS 659.033(1) or (2) or 659.400 to 659.435 may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages not to exceed $2,500. At the request of any party the trial of such case shall be by jury. In addition to the relief which the court is authorized to award under subsection (1) of this section the court may also provide such equitable relief as it deems appropriate. In any action brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal. Any attorney fee agreement shall be subject to approval by the court."

which provides a complainant with the right to sue in circuit court in addition to the old administrative remedy. Petitioners contend that, as a result of that legislation, damages may be awarded only in a judicial proceeding.[3] They urge that their interpretation is supported by the legislative history which, they assert, shows that ORS 659.121 was meant to bring Oregon into consonance with federal law, which does not provide for recovery of damages in an administrative proceeding. *See* 42 USC § 3610.

In *Holien v. Sears, Roebuck & Co.,* 298 Or 76, 93-96, 689 P2d 1292 (1984), the Supreme Court reviewed the legislative history of ORS 659.121, which indicates that the principal concern was to create a private cause of action for discrimination in employment and housing. Discussion of correspondence of the proposed Oregon legislation to federal provisions is part of that history. However, we do not agree with petitioners that it shows any intention to abrogate the previously existing powers of the Commissioner recognized in *Williams v. Joyce, supra.* In *Holien,* the Supreme Court concluded that the 1977 legislation did not eliminate or reduce existing administrative remedies, including damages, in employment discrimination. 298 Or at 95. We find that it did not change administrative remedies for housing discrimination either. ORS 659.121(4) specifically provides that the statute "shall not be construed to limit or alter in any way the authority or power of the commissioner * * * until and unless the complainant commences civil suit or action." The creation of a judicial remedy with damages as relief did not eliminate the Commissioner's administrative authority to assess damages.[4]

---

[3] Petitioners state that their position was articulated by Judge Buttler in his specially concurring opinion in *Fred Meyer v. Bureau of Labor,* 39 Or App 253, 272, 592 P2d 564, *rev den* 287 Or 129 (1979), an employment discrimination case. In another employment discrimination case, *Ogden v. Bureau of Labor,* 68 Or App 235, 247, 682 P2d 802 (1984), *aff'd in part, rev'd in part and remanded,* 299 Or 98, 699 P2d 189 (1985), we recognized Judge Buttler's concurrence but reaffirmed the Commissioner's right to assess damages. On review, the petitioner did not challenge the right to damages, and the Supreme Court allowed prejudgment interest on the damages. 299 Or at 105.

[4] Petitioners also argue that the Commissioner is without authority to award monetary damages, because Hampton and Cavender were not "parties" to the proceeding. Petitioners contend that, under the agency rules in effect at the time of the hearing, *former* OAR chapter 839, division 4, a complainant had to serve and file a notice of appearance to become a party and that it is "fundamental" that an individual

■ Petitioners next contend that damages could not be awarded to the personal representative of Cavender's estate. Cavender died in November, 1985, after the hearing but before the Commissioner's final order. Petitioners argue that there is no provision for survivorship of administrative claims.

ORS 659.070 provides that an order from such a proceeding

> "which awards money damages, unless paid, shall constitute a judgment and may be filed in accordance with the provisions of ORS 18.320 to 18.370. Execution may be issued upon the order in the same manner as execution upon a judgment in a court of record."

The result of pursuing the administrative remedy is the same, insofar as damages are involved, as if the complainant had chosen to file a civil action. Providing for damages securable by execution as on a judgment is a way to achieve the purpose of ORS chapter 659 to eliminate the effects of discrimination. *See Williams v. Joyce, supra,* 4 Or App at 504. The legislature intended that an order arising out of the administrative proceeding have the same effect as a judgment in a judicial proceeding. We believe that it intended that the right to procure full administrative relief would survive the death of the injured party. *See* ORS 115.305.

■ Hampton filed her complaint on December 28, 1983. On October 8, 1984, the Commissioner filed charges which alleged that petitioners had refused to rent to Hampton because of her race, a violation of ORS 659.033(1)(a). After the hearing, petitioners moved to dismiss the charge, arguing that the evidence did not show that Hampton had filed a formal rental application and been rejected and that, therefore, petitioners could not be found to have refused to rent to her. The Commissioner then amended the charges to add the allegation that petitioners had "attempted to discourage" Hampton from renting a space, a violation of ORS 659.033(1)(d). Petitioners argue that Commissioner lacked

---

must participate in order to receive an award. That ignores the statutory scheme of ORS chapter 659, which provides for the Commissioner to act on a complainant's behalf if she finds that there is substantial evidence of discrimination. ORS 659.045; ORS 659.050. Although a complainant might elect to participate in the proceedings on a complaint, there is no requirement to do so in order for the Commissioner to act to protect the complainant's interest.

the authority to add that allegation more than a year after the alleged discrimination and after the hearing. *See* ORS 659.045.

We need not address petitioners' several arguments advanced in support of that contention, because the Commissioner's amendment was surplusage. She found that petitioners' reliance on the 30-day notice requirement was a pretext to keep Hampton out of the park, that Hampton's repeated requests to be supplied with an application constituted an application for tenancy, that Hampton did all that she could have been expected to do and that the reason that she did not fill out the application was due entirely to petitioners' failure to make it available to her. There is substantial evidence to support all of those findings. Those findings would, indeed, support a conclusion that petitioners discouraged Hampton from renting,[5] but the Commissioner was correct in concluding[6] that they also constituted a refusal to rent. Therefore, the original charge was sustained, and the post-hearing amendment is of no significance.

Affirmed.

---

[5] Petitioners are incorrect in contending that, because ORS 656.033 creates liability for discouraging rentals and also, but separately, for refusing to rent, the evidence needed to prove each violation is different. The same evidence may prove both.

[6] The Commissioner held that petitioners had discouraged Hampton from renting but stated that she would also hold that they had refused to rent, if she were required to reach the issue.