Argued and submitted April 4, the decisions of the Commissioner and the Court of
Appeals affirmed August 8, 1989

In the Matter of the Alleged
Unlawful Housing Practices by

SCHIPPOREIT et al,
*Petitioners on Review,*

*v.*

ROBERTS,
*Respondent on Review.*

(Agency No. 06-84; CA A43861; SC S35768)

778 P2d 953

Dale L. Crandall, Salem, argued the cause and filed the petition for the petitioners on review.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for the respondent on review.

GILLETTE, J.

## GILLETTE, J.

The issue in this case is whether complainants, who did not elect to become parties to a housing discrimination contested case hearing before respondent Commissioner of the Bureau of Labor and Industries (the Commissioner), nevertheless may be awarded money damages.[1] The Court of Appeals determined that money damages are available to non-parties in such proceedings. *Schipporeit v. Roberts*, 93 Or App 12, 760 P2d 1339 (1988). We affirm.

### FACTS

The Commissioner found the following facts, supported by substantial evidence. Petitioners, Mr. and Mrs. Schipporeit, own and operate Sunnyview Mobile Home Park in Salem, Oregon. John Cavendor, a white man, owned and occupied a trailer which he kept in a space rented from the Schipporeits. In September, 1982, Cavendor agreed to sell his trailer to Pearl Hampton, a black woman. He also planned to transfer to Hampton his right to rent the space in the Schipporeits' trailer park. The Schipporeits did not wish to rent to a black person. They therefore insisted upon strict compliance with a thirty-day notice-of-sale provision in Cavendor's rental agreement, the effect of which was to prevent Hampton from taking up residence at the trailer park. They also refused to provide Hampton with a rental application.

Both Cavendor and Hampton filed complaints with the Commissioner as provided in ORS 659.045.[2] The Commis-

---

[1] Petitioners also sought review as to whether damages for mental distress are available. OAR 839-03-090(1)(b) specifically provides for the availability of damages for "emotional distress and/or impaired personal dignity." Because petitioners raised this issue for the first time in their petition to this court we did not allow review on that issue and express no opinion concerning it.

[2] ORS 659.045(1) provides in pertinent part:

"Any person claiming to be aggrieved by an alleged distinction, discrimination or restriction on account of race, religion, sex, marital status, color, national origin or age if the individual is 18 years of age or older * * * by * * * any person claiming to be aggrieved by a violation of ORS 659.033 may, or the attorney of the person may, make, sign and file with the Commissioner of the Bureau of Labor and Industries a verified complaint in writing which shall state the name and address of the person * * * alleged to have committed the act complained of and which complaint shall set forth the particulars thereof. The complainant may be required to set forth in the complaint such other information as the commissioner may deem pertinent. A complaint filed pursuant to this section shall be filed no later than one year after the alleged distinction, discrimination or restriction."

sioner held a hearing pursuant to ORS 659.060.[3] Neither Cavendor nor Hampton elected to become parties to the hearing, although that option was available to them under *former* OAR 839-04-005(2)(b).[4] After the hearing, the Commissioner found that the Schipporeits had committed racial discrimination in housing in violation of ORS 659.033(1).[5] The Commissioner ordered the Schipporeits to cease and desist their discriminatory practices and to pay damages of $12,000 to Hampton and $4,781.31 to Cavendor.[6]

---

[3] ORS 659.060 provides in pertinent part:

"(1) In case of failure to resolve a complaint after reasonable effort under ORS 659.050, or if it appears to the commissioner that the interest of justice requires a hearing without first proceeding by conference, conciliation and persuasion, or if a written request is made by respondent in accordance with ORS 659.050, the commissioner shall cause to be prepared and served upon each respondent required to appear at such hearing such specific charges, in writing, as the respondent will be required to answer, together with a written notice of the time and place of such hearing.

"(2) All proceedings before the commissioner under this section shall be in conformity with the provisions of ORS 183.310 to 183.550."

[4] *Former* OAR 839-04-005(2)(b) defined "party" as:

"Any Complainant(s), who has filed a Notice of Independent Appearance under OAR 839-04-020."

This rule was repealed on September 2, 1986. A similar rule is now in effect as OAR 839-30-025(15)(b), which, in part, defined "party" as:

"Any person or government agency or entity that has been granted 'party' or limited party status under 839-30-080."

Under OAR 839-30-080(1), however, a complainant does not qualify as either a party or a limited party. Moreover, the participation of a complainant is limited by OAR 839-30-058:

"The Claimant or Complainant may have counsel present at the contested case hearing; however counsel's participation is limited to rendering advice to his or her client. Such counsel may not file motions, make objections, examine or cross examine witnesses or make legal argument."

[5] ORS 659.033(1) provides in pertinent part:

"No person shall, because of race, color, sex, marital status, religion or national origin of any person:

"(a) Refuse to sell, lease or rent any real property to a purchaser.

"* * * * *

"(d) Attempt to discourage the sale, rental or lease of any real property to a purchaser."

ORS 659.031 defines a "purchaser":

"As used in ORS 659.033, unless the context requires otherwise, 'purchaser' includes an occupant, prospective occupant, lessee, prospective lessee, buyer or prospective buyer."

[6] These remedies are specifically provided by OAR 839-03-090(1), which provides

The Schipporeits sought judicial review under ORS 183.480,[7] contending that the Commissioner lacked the authority to award damages to a nonparty. The Schipporeits also contend that certain 1977 changes in the statutes governing housing discrimination provide an exclusive civil judicial procedure for obtaining money damages, divesting the Commissioner of whatever power she once might have had to award money damages. As noted, the Court of Appeals affirmed, and we allowed review.

## ANALYSIS

ORS 659.010 to 659.110 were originally enacted in 1949 to combat employment discrimination. Or Laws 1949, ch 221. In 1957, ORS 659.033 and 659.045 were added and other statutes amended to combat housing discrimination. Or Laws 1957, ch 724. As a result, both types of discrimination are now within the purview of the Commissioner. The same general statutory definitions, policies, and procedures apply to the investigation and resolution of incidents of both types of discrimination.

Prior to the enactment of ORS 659.121 in 1977, the only statement that the Commissioner had authority to award money damages to victims of housing discrimination was found in a Court of Appeals case, *Williams v. Joyce,* 4 Or App 482, 479 P2d 513, *rev den* (1971). In *Williams,* the Court of Appeals, after examining the purposes of housing discrimination legislation and the Oregon statutory scheme, determined that money damages were available to victims of housing discrimination under the remedial administrative process outlined in ORS 659.010 through 659.110. 4 Or App at 503-04.

---

in pertinent part:

"Remedy is that which eliminates the effect of an alleged unlawful practice. Such remedy may include, but is not limited to:

"* * * * *

"(b) In cases of discrimination in housing or by places of public accommodation: a rental, lease, or sale of real property; the service lost; directly related expenses or lost benefits attributable to the practice; compensation for emotional distress and/or for impaired dignity; and interest."

[7] ORS 183.480 provides in pertinent part:

"(1) Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form."

ORS 659.022 states the purpose of the statutory scheme:

> "The purpose of ORS 659.010 to 659.110 * * * is to encourage the fullest utilization of available manpower by removing arbitrary standards of race, religion, color, sex, marital status, national origin or age as a barrier to employment of the inhabitants of this state; to insure human dignity of all people within this state, and protect their health, safety and morals from the consequences of intergroup hostility, tensions and practices of discrimination of any kind based on race, religion, color, sex, marital status or national origin. To accomplish this purpose the Legislative Assembly intends by ORS 659.010 to 659.110 * * * to provide:
>
> "* * * * *
>
> "(2)   An adequate remedy for persons aggrieved by certain acts of discrimination because of race, religion, color, sex, marital status or national origin or unreasonable acts of discrimination in employment based upon age."

Under ORS 659.050, the Commissioner is given the power to issue "cease and desist" orders proscribing unlawful discriminatory practices. "Cease and desist" orders are defined in ORS 659.010(2):

> " 'Cease and desist order' means an order signed by the commissioner * * * issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring the respondent to:
>
> "(a)   Perform an act * * * reasonably calculated to carry out the purposes of * * * ORS 659.010 to 659.110 * * *, eliminate the effects of an unlawful practice found, and protect the rights of the complainant and other persons similarly situated * * *."

*Williams* held that payment by the discriminator of money damages to a victim of his discrimination "is an act reasonably calculated to eliminate the effects of the discrimination" and is within the authority granted to the Commissioner to provide an "adequate remedy" to victims of discrimination. *Williams v. Joyce, supra,* 4 Or App at 504. Although this analysis was never adopted by this Court, the legislature was aware of and apparently accepted the power of the Commissioner to award money damages when it amended ORS chapter 659 in 1977.[8]

---

[8] Minutes, Senate Judiciary Committee, June 6, 1977, p 9.

The Schipporeits contend, however, that the enactment in 1977 of ORS 659.121[9] deprived the Commissioner of whatever authority she had to order payment of money damages to a complainant. *See Fred Meyer v. Bureau of Labor,* 39 Or App 253, 592 P2d 564 (1979)(Buttler, J., concurring).

We disagree. The first sentence of ORS 659.121(4) states that "[t]his section shall not be construed to limit or alter in any way the authority or power of the commissioner or to limit or alter in any way any of the rights of an individual complainant until and unless the complainant commences civil suit or action." Obviously, if the Commissioner had the authority to award money damages prior to 1977 — and, as the legislature knew, she did under *Williams v. Joyce, supra,* — it would "limit or alter" her power to take that authority away from her.

This court commented in *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 689 P2d 1292 (1984), a case involving employment discrimination, that even after the enactment of ORS 659.121 a victim of employment discrimination could "continue to obtain such relief, including general damages, as is provided under administrative remedies." 298 Or at 95 *(dictum).* Although the current case deals with housing discrimination rather than employment discrimination, the statutory scheme is, in this respect, the same for both issues. The legislative history of ORS 659.121 contains no indication of a

---

[9] ORS 659.121 provides in pertinent part:

"(2) Any person claiming to be aggrieved by alleged violations of ORS 659.033(1) or (2) * * * may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages not to exceed $2,500. At the request of any party the trial of such case shall be by jury. In addition to the relief which the court is authorized to award under subsection (1) of this section the court may also provide such equitable relief as it deems appropriate. In any action brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal. Any attorney fee agreement shall be subject to approval by the court.

"* * * * *

"(4) This section shall not be construed to limit or alter in any way the authority or power of the commissioner or to limit or alter in any way any of the rights of an individual complainant until and unless the complainant commences civil suit or action. The filing of a civil suit or action in either circuit court pursuant to subsection (1) of this section or federal district court under applicable federal law shall constitute both an election of remedies as to the rights of that individual with respect to those matters alleged in the complaint filed with the commissioner, and a waiver with respect to the right to file a complaint with the commissioner pursuant to ORS 659.040(1) or 659.045(1)."

contrary legislative intent. ORS 659.121 does not aid the Schipporeits.

The Schipporeits also base part of their argument on *former* Oregon Administrative Rules Chapter 839, Division 4, which governed Bureau of Labor and Industries hearings. We are not persuaded by their reasoning. Those rules did not limit the ability of a complainant to benefit from administrative proceedings. They merely specified the procedure a complainant must follow if he or she wished to participate directly in the hearing process.

The administrative rules which defined parties were enacted in 1981. The statutes themselves do not distinguish between "parties" and "nonparties." If, as we have said, the Commissioner had the authority to award money damages to complainants prior to 1981, the enactment of a rule permitting complainants to participate directly in the hearing process did not waive that authority. OAR Chapter 839, Division 3, which was also promulgated in 1981 and is still in effect, outlined the entire complaint, investigation, and hearing process. OAR 839-03-090(1)(b) specifically provided for money damages with no mention of the word "party." Obviously, the Commissioner did not intend OAR 839-04-005(2) to restrict her authority to award money damages to nonparties.

█ █ The Schipporeits argue that allowing nonparties to receive money damages in an administrative proceeding may subject them to damage claims in two separate and cumulative legal proceedings. This fear is not well founded. Once a complaint has been filed with the Commissioner, an action can be initiated under ORS 659.121 only in accordance with ORS 659.095 and OAR 839-03-020.[10] If the Commissioner dismisses

---

[10] ORS 659.095(1) provides in pertinent part:

"If, within one year following the filing of a complaint pursuant to ORS 659.040(1) or 659.045(1) * * * the commissioner has been unable to obtain a conciliation agreement with a respondent, or has not caused to be prepared and attempted to serve the specific charges referred to in ORS 659.060(1), the commissioner shall so notify the complainant in writing and within 90 days after the date of mailing of such notice, the complainant may file a civil suit as provided for in ORS 659.121. Within one year following the filing of the complaint, the commissioner may issue, or cause to be issued, an administrative determination. If no administrative determination has been issued at the end of the one-year period, the commissioner has no further authority to continue proceedings to resolve the complaint, except as provided in ORS 659.070 and 659.085. If prior to the expiration of one year from the filing of a complaint pursuant to this section the

the complaint on its merits under ORS 659.060(3), then ORS 659.095 and OAR 839-03-020 do not permit a subsequent civil action under ORS 659.121. Similarly, ORS 659.095 and OAR 839-03-020 prohibit the filing of any civil action under ORS 659.121 after the Commissioner has made a determination on the merits. Thus, the Schipporeits fears are groundless. Aside from access to judicial review, both Cavendor and Hampton are fully bound by the decision of the Commissioner, even though they did not elect to become parties.

## CONCLUSION

A victim of housing discrimination under ORS 659.033 has two options. He or she may file a complaint with the Commissioner of the Bureau of Labor and Industries under ORS 659.045 and allow the complaint to be investigated

---

commissioner dismisses the complaint for any reason other than a dismissal pursuant to ORS 659.060(3), or the complainant requests the commissioner to terminate proceedings with respect to the complaint, the commissioner shall notify the complainant of said dismissal or termination in writing, and within 90 days after the date of mailing of such notice of dismissal or termination, a civil suit may be filed as provided for in ORS 659.121."

OAR 839-03-020 provides:

"(1) Instead of filing a complaint with the Division, a person who believes that he/she has been discriminated against may file a civil suit as provided for in ORS 659.121 or 30.680. A person who files a civil suit as provided for in ORS 659.121 cannot later file a complaint with the Division which makes the same allegations made in that civil suit.

"(2) After filing a complaint with the Division, a Complainant may file a civil suit in state or federal court. If the civil suit includes the same allegations as the complaint, the Division will dismiss the complaint. The Division will notify the Complainant and Respondent that it has terminated action and dismissed the complaint.

"(3) During the Division's processing of a complaint, the Commissioner will notify the Complainant of his/her right to file a civil suit as provided in ORS 659.121. The Complainant will have ninety (90) days from the mailing date of the notice to file a civil suit. Such a notice will be sent if within one year from the date of filing of a complaint:

"(a) The Complainant withdraws the complaint;

"(b) The Commissioner dismisses the complaint, except as a result of a contested case hearing;

"(c) The Commissioner has not issued an Administrative Determination; once the notice is mailed, the Division has no further jurisdiction and can take no further action;

"(d) The Commissioner has issued an Administrative Determination, but has not obtained a conciliation agreement with the Respondent or issued specific charges in preparation for a contested hearing; unless and until the Complainant files civil suit, the Division will continue its activity to resolve the Complaint."

and resolved administratively following the procedures detailed in ORS 659.045, 659.050, 659.060, and OAR Chapter 839, Division 3. Money damages are available to a complainant under this procedure.

However, a complainant who is dissatisfied with the pace of the administrative proceedings may request that the Commissioner terminate the proceedings. The complainant then may sue under ORS 659.121, so long as that is done within the time limitations of ORS 659.095. In the alternative, complainant may sue under ORS 659.121 without ever filing a complaint with the Commissioner. However, the decision to sue constitutes an election of remedies which prevents any further administrative action.

In this case, neither Cavendor nor Hampton filed a civil suit against the Schipporeits. Thus, the Commissioner was never deprived of jurisdiction to resolve the complaint and the award of damages is proper.

The decisions of the Commissioner and of the Court of Appeals are affirmed.