Argued April 18, affirmed in part, reversed in part, and re-
manded June 17, reconsideration denied July 24, both petitioner
and respondent's petition for review allowed September 4, 1974

# SCHOOL DISTRICT No. 1, MULTNOMAH COUNTY, *Petitioner, v.* NILSEN ET AL, *Respondents.*

523 P2d 1041

*Mark C. McClanahan,* Portland, argued the cause for petitioner. With him on the brief were Bruce E. Speidel and Miller, Anderson, Nash, Yerke & Wiener, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

This is a proceeding for judicial review of an order of the Commissioner of the Bureau of Labor. That order declared certain of the policies of the petitioner-School District relating to pregnancy and maternity to be in violation of ORS 659.030 (1),[1] and

---

[1] ORS 659.030 provides in part:

"For the purposes of ORS 659.010 to 659.110, *it is an unlawful employment practice:*

"*(1) For an employer, because of the* race, religion, color, *sex* or national origin *of any individual* or of any other person with whom the individual associates, to refuse to hire or employ or to bar or discharge from employment such individual or *to discriminate against such individual in compensation or in terms, conditions or privileges of employment. However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business,* including, but not limited to, discrimination due to the physical requirements of the employment, lack of adequate facilities to accommodate both sexes or special environmental conditions justifying such employment.

"* * * * *." (Emphasis supplied.)

ordered the District to cease and desist from enforcing those policies. In addition, the order awarded damages and other relief to the teacher whose complaint precipitated the proceeding as well as to all other teachers similarly situated. The District contends in this court that (1) the Commissioner erred in finding that the District's policies worked an unlawful discrimination on the basis of sex, (2) some of the relief granted the complainant and all others similarly situated is in excess of the Commissioner's authority, and (3) the scope of the Commissioner's order goes beyond the issues presented at the hearing.

The controversy arose out of the following fact situation: In September of 1970, Mrs. Sally Flury, a third-year probationary teacher employed by the School District, notified the District that she was pregnant and expected her child to be born in late January or early February 1971. She was informed that pursuant to the District's rules,[2] she would be

---

[2] Chapter Six, Section A., Rules and Regulations—School District No. 1, Multnomah County, Portland, Oregon, provided in part as follows:

"1. Teachers on a leave of absence shall have their names listed in the position held at the time such leave was granted * * *.

"2. A voluntary leave of absence is defined as a leave of absence granted upon the written request of a teacher for a reason deemed adequate by the formal action of the Board. *No voluntary leave of absence shall be granted to a probationary teacher* except for those entering the military service under provisions of the Selective Service Act.

"3. Upon the recommendation of the office of the superintendent, a voluntary leave of absence may be granted without pay to *permanent teachers* for a period not to exceed one year:

"* * * * * [Stated reasons.]

"4. (a) As soon as any *permanent teacher* becomes aware of her pregnancy, she shall request a maternity leave of absence in writing. The effective date of the leave shall be

required to submit a resignation form which would become effective when the Superintendent determined, based on information from Mrs. Flury and her physician, that Mrs. Flury was no longer able to teach. The effect of such resignation was that Mrs. Flury would lose the credit toward tenure which she had accumulated (in her case, two and one-half years) and would have to start over again as a first-year probationary teacher if she were to resume employment with the District. Mrs. Flury submitted the resignation form under protest, and proceeded to file a complaint with the Civil Rights Division of the Oregon Bureau of Labor, alleging that the District's resignation policy constituted discrimination on the basis of sex in violation of ORS 659.030. Conciliation was attempted but the efforts failed. Thereafter, on March 4, 1971, the Attorney General, pursuant to ORS 659.060,[9] as it read prior to the 1971 amendments, filed "Specific

---

determined by the Superintendent. Such leave *shall* be without pay and either one or two years in length; provided, however, at the discretion of the Superintendent, the leave may be shortened if such action is recommended by a physician. If a maternity leave of absence expires during the school year and no suitable position is open, the Superintendent may postpone the reassignment of the teacher affected until the beginning of the next fall term.

"(b) Successive leaves of absence for maternity shall not be granted for a greater period of time than four years.

"(c) *As soon as any probationary teacher becomes aware of her pregnancy she shall submit her resignation. The effective date of the resignation shall be determined by the Superintendent.*

"* * * * *." (Emphasis supplied.)

[9] ORS 659.060 (1969) provided in pertinent part as follows:

"(1) In case of failure to resolve a complaint after reasonable effort under ORS 659.050 a copy of the records on file in the case shall be certified by an officer of the Bureau of Labor * * *. He shall deliver such copy, together with a

Charges of Discrimination" against the District, alleging that Mrs. Flury had been discharged from her employment solely because of her sex.

A hearing was held before a tribunal appointed pursuant to ORS 659.060 (4) (as it existed prior to the 1971 amendments) by the Commissioner of Labor on March 30, 1971, and on October 26, 1971, the tribunal filed its proposed findings of fact. These proposed findings of fact were confined to analysis of the District's rule that required resignation of pregnant probationary teachers. The tribunal found that this rule constituted discrimination on the basis of sex, and that the District had not shown that the rule was necessitated by a bona fide occupational requirement. Thereafter, Mrs. Flury filed a statement of pecuniary detriment with the Civil Rights Division, alleging that she had incurred $250 expense in private attorney's fees and $1,000 damages for humiliation, frustration, anxiety and nervousness brought about by the District's actions. A supplemental hearing was held on these pecuniary matters.

On December 12, 1973, the Commissioner of Labor filed his "Supplemental Findings, Conclusions of Law and Order." The Commissioner adopted the tribunal's findings of fact and supplemented them with his own findings that Mrs. Flury was entitled to recover $150 in attorney's fees and $700 damages for humiliation, frustration, anxiety and nervousness. The Commis-

list of available dates for hearing, to the Attorney General
* * *.

"(2) * * * [T]he Attorney General shall prepare * * * specific charges * * * to prefer against such respondents * * *.

"* * * * * *."

sioner then went on to make a lengthy order which contained injunctive provisions, provisions for liaison between the District and the Civil Rights Division of the Bureau of Labor, and class remedy provisions. In its petition for judicial review the District attacks a number of portions of the order as unnecessarily broad and onerous.

For the purposes of clarity, this opinion will be divided into three sections: first, whether the District's challenged policy was unlawful; second, whether the damages and attorney's fees granted complainant were proper; third, whether the scope of the Commissioner's order was proper insofar as it purported to affect persons other than the complainant.

## I

ORS 659.030 (1) provides in pertinent part that it is an unlawful employment practice for an employer, because of the sex of any individual,

> "* * * to discriminate against such individual * * * in terms, conditions or privileges of employment. * * *"

The School District's defense of its rule requiring the resignation of pregnant probationary teachers is two-pronged: first, the District contends that its rule does not discriminate on the basis of sex; second, even if the rule should be found to discriminate on the basis of sex, it is not an unlawful employment practice because it is justified by bona fide occupational requirements. We discuss these points separately.

## A

Evidence presented at the hearing showed that the District required resignation only in the case of

probationary teachers, i.e., those who had not served for the three years necessary to acquire tenure. Tenured teachers were granted an unpaid maternity leave of absence of one year, with an option to extend the leave for a second school year if the teacher so requested. Unlike the probationary teacher who had to resign and start over again with first-year teacher status, the tenured teacher returning from a maternity leave of absence suffered no diminution in status and was also guaranteed re-employment. The District focuses on the distinction between probationary and tenured teachers and contends that since the distinction is based on length of service, not sex, it is not within the provisions of ORS ch 659.

The fact that the District granted maternity leave of absence to tenured teachers and did not grant it to probationary teachers is not controlling. The relevant consideration is whether all probationary teachers, male and female, are treated alike when their physical condition temporarily prevents them from teaching. It is apparent that they are not.

The evidence showed that all teachers, probationary and tenured, were entitled to 10 days' fully paid sick leave each year. In addition, all teachers were entitled to a maximum of 20 days' sick leave at two-thirds of their scheduled salary.[4] These allowances

---

[4] Article 12 A, Agreement between the Board of Education, School District No. 1, Multnomah County, and the Portland Ass'n. of Teachers (July 1970 through June 1971), provided:

"A. *Sick Leave*

"Teachers who are absent because of personal illness shall receive compensation for such absence in accordance with the provisions and reservations pertaining to sick leave allowances.

"1. All teachers shall be granted ten days sick leave during each school year. Such sick leave shall be credited to said teachers on the first school day of the fall semester. In case

were cumulative, and a teacher received credit for days of sick leave from other teaching positions, so it was conceded that a probationary teacher might be entitled to take as many as 230 consecutive days of compensated sick leave. After exhaustion of compensated sick leave, the teacher's time of incapacitation would be uncompensated, but officials of the District testified that a teacher with a prolonged illness would be asked to resign only in extreme cases such as when the incapacitation began at the beginning of the school year and the teacher's physician indicated that it was unlikely that the teacher would be able to return for the rest of the year.

The District's sick leave policy applied to any incapacitation caused by illness or injury. It applied whether the incapacitation was involuntary, such as catching a cold, or the result of voluntary conduct, such as a skiing accident. It applied whether the incapacitation came on suddenly or whether it was the result of something which could be planned well in advance. In fact, it applied to every type of physical

---

of teachers who begin service after the beginning of the school year, sick leave shall be credited on the first day of active teaching service and shall consist of one day for each payroll month remaining in the school year.

"2. Sick leave days may be accumulated by probationary and tenure teachers only if not used in the year for which granted. Total sick leave which can be accumulated by any teacher under this agreement shall be unlimited.

"3. When a teacher has exhausted his sick leave, he shall receive two-thirds of his scheduled salary for a maximum of twenty days during the school year.

"4. A teacher who has accumulated sick leave during employment in another school district, and who was so employed during the preceding year, shall, upon proper verification, be allowed the number of sick leave days so accumulated, except that no more than 180 days shall be credited to the teacher."

incapacitation except one: pregnancy and delivery. That disability was singled out for exclusion from the general policy despite the fact that there was no indication that the period of confinement required by pregnancy and delivery was necessarily more than that brought about by other causes. Indeed, the only testimony on the subject, that of an obstetrician, was to the effect that the required leave period would normally be only 12-14 weeks, and the witness conceded that this might be less in individual cases.

While no Oregon cases address the question of whether this classification constitutes a violation of ORS 659.030, a federal district court case has construed a nearly identical federal statute and found the statute to have been violated. 42 USC §2000e-2 (a) (1) (1970) provides in pertinent part:

> "It shall be an unlawful employment practice for an employer—
> "(1) * * * to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * *." (Civil Rights Act of 1964, Pub L No 88-352, title VII, § 703 (a) (1), 78 Stat 255.)

In *Hutchison v. Lake Oswego School Dist. No. 7*, 374 F Supp 1056 (D Or 1974), the court held that the denial of sick leave benefits for childbirth-related disabilities while extending them to all other disabilities constituted discrimination because of sex in violation of the federal statute. In so holding, the court stated:

> "The effects of pregnancy and pregnancy-related illness are debilitating in much the same way as the physical and mental conditions that are included within the scope of the disability insurance program. The question whether the exclusion of pregnancy-

related disabilities from the program is arbitrary or rational depends upon whether pregnancy and pregnancy-related illness substantially differ from the included disabilities." *Hutchison v. Lake Oswego School Dist. No. 7,* supra at 10.

In *Green v. Waterford Board of Education,* 473 F2d 629 (2d Cir 1973), the plaintiff was a nontenured teacher employed by the defendant school board. She became pregnant and asked to be allowed to teach until the end of the first semester, January 31, 1972. She was expecting in mid-February. She was told that she must commence a maternity leave on November 17, 1971, pursuant to an agreement between the Waterford Education Association and the Board. The court stated plaintiff's argument that the policy was discriminatory as follows:

"* * * Plaintiff admits the obvious, that men do not become pregnant, but points out that men, being human, are also subject to crises of the body, some of which, like childbirth, give ample warning: A cataract operation or a prostatectomy, for example, may be planned months ahead. Because male teachers are not forced by defendant Board to take premature leave because of a known forthcoming medical problem, female teachers should not be treated differently. * * *" 473 F2d at 634.

And in *Sprogis v. United Air Lines, Inc.,* 444 F2d 1194 (7th Cir 1971), the court considered an airline rule that stewardesses could not be married. In invalidating the rule, the court stated:

"The scope of Section 703 (a) (1) is not confined to explicit discrimination based 'solely' on sex. In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. Section 703 (a) (1) subjects to scrutiny and

eliminates such irrational impediments to job opportunities and enjoyment which have plagued women in the past. The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class. Discrimination is not to be tolerated under the guise of physical properties possessed by one sex [citation omitted] or through the unequal application of a seemingly neutral company policy. [Citation omitted.]" (Footnote omitted.) 444 F2d at 1198.

We are unable to discern any reason for differentiating between a disability caused by maternity and disabilities caused by other causes. Sick leave is to compensate teachers for the wage loss they sustain by being unable to work because of illness or injury. The economic hardship which pregnant women suffer when they cannot work is identical to the hardship of other disabled workers. *Hutchison v. Lake Oswego School Dist. No. 7,* supra. *See also, Aiello v. Hansen,* 359 F Supp 792 (ND Cal 1973); *Wetzel v. Liberty Mutual Insurance Company,* 372 F Supp 1146 (WD Pa 1974). We conclude that the District's rule discriminated on the basis of sex and was therefore prima facie in violation of ORS 659.030 (1).

B

■ The District contends that even if its resignation rule does constitute discrimination because of sex, it is not an unlawful employment practice because it resulted "from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business * * *." ORS 659.030 (1). The District attempts to justify the rule on essentially two bases: a need to evaluate adequate probationary teachers, and a desire to avoid repeated interruptions in the school year. While these are certainly legitimate con-

cerns, the District did not show why sick leaves due to causes other than maternity would not cause similar problems. Moreover, the evidence showed that in some cases the rule was applied so as to cause substantial injustice without any apparent countervailing benefits to the District. Thus, there was testimony that resignation would be required even in the case of a third-year probationary teacher who had already been recommended for tenure and who expected to deliver her baby in July so as not to miss any teaching time.

The Commissioner specifically found that the discrimination caused by the District's resignation rule was not reasonably necessary for normal operation of the District's business. That finding is amply supported by the record and we therefore affirm it.

## II

In addition to holding that the District's resignation rule unlawfully discriminated against complainant and all others similarly situated, the Commissioner awarded complainant $150 for out-of-pocket attorney's fees and $700 damages for humiliation, frustration, anxiety and nervousness. The Commissioner was authorized to allow damages for mental distress, *Williams v. Joyce,* 4 Or App 482, 494, 479 P2d 513, 40 ALR3d 1272, Sup Ct *review denied* (1971), and we hold that there was substantial evidence supporting the award. However, the award of attorney's fees was not authorized. Nothing in ORS ch 659 allows the Commissioner to award the victim of discrimination attorney's fees to make the victim "whole" and in the absence of an express statutory provision, the rule in Oregon is that such an award is not permissible.

> "We have adopted a narrow policy on the allowance of attorney fees and held that they will not be

allowed unless expressly authorized by a statute or a contract. * * *" *Hughes v. Bembry,* 256 Or 172, 177-78, 470 P2d 151 (1970).

The granting of attorney's fees was erroneous, and on remand the Commissioner shall delete that award from his order.

## III

■■ Next, we consider the issue of the scope of the Commissioner's order. The Commissioner has broad powers to fashion remedies to right the effects of unlawful discrimination, *Williams v. Joyce,* supra, but these powers are not unlimited. Much as the dimensions of an action at law are determined by the pleadings, the issue considered by the Commissioner must be confined to the allegations of the complaint. As we stated in *School Dist. No. 1 v. Nilsen,* 7 Or App 396, 407-08, 490 P2d 1265 (1971), *rev'd on other grounds* 262 Or 559, 499 P2d 1309 (1972):

"Though not explicit on the face of ORS ch 659, the logic of the statutory scheme for redressing discriminatory acts would dictate that a 'charge' filed by the Attorney General under these circumstances be limited to the allegations of the complaint. The parties agree the primary goal of Oregon's Fair Employment Practices Law (FEPL) is resolution of complaints through voluntary compliance. It would follow, then, that to allow a hearing on 'charges' not within the ambit of the complaint, and, therefore, presumably not a subject of conciliation, would bypass the statutory conciliation procedures designed to bring about voluntary compliance. In accord with our construction of Oregon's Fair Employment Practices Law are federal cases construing analogous provisions of the federal Civil Rights Act, Title VII of the Civil Rights Act, 42 USC 2000e-5-15 (1964). Facing a somewhat similar situation, the court in *King v.*

*Georgia Power Company,* 295 F Supp 943, 947 (ND Ga 1968), stated:

> " '\* \* \* It should be emphasized that the EEOC [Equal Employment Opportunity Commission, the federal counterpart of the Bureau of Labor] is not free to manipulate the scope of a case beyond the bounds herein expressed. The expansion of a particular charge is limited to the issues that a particular complainant has standing to raise \* \* \*.' " (Brackets theirs.)

■ The only issue before the Commissioner in the case at bar was the validity of the District's rule that pregnant probationary teachers must resign. There was nothing before the Commissioner concerning the validity of other District rules regarding maternity, such as the rule that tenured teachers who took a maternity leave had to remain out of school for the remainder of the school year, or sex discrimination in general. Nevertheless, the Commissioner's order deals with matters which were not before him and which can be resolved only in proceedings where they are actually present and which we need not discuss here. The Commissioner is directed, on remand, to revise his order and confine its scope so as to deal only with the resignation rule.

Affirmed in part, reversed in part, and remanded.