Argued and submitted August 20, affirmed in part,
reversed in part and remanded October 6, 1980

GAUDRY,
*Petitioner,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

(No. 14-78, CA 16930)

617 P2d 668

Dana R. Taylor, Portland, argued the cause for petitioner. With him on the brief was Howard R. Hedrick, Portland.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is appeal from an order of the Bureau of Labor in which the Commissioner found that petitioner, the proprietor of a supper club, had discriminated against a patron, Vanessa Duncan, on the basis of the race of her companion. The Commissioner's order directed petitioner to pay Ms. Duncan $2,500 as compensation for humiliation and mental anguish, to cease and desist from engaging in discriminatory practices and to post, for a period of 90 days in a conspicious place in each of his business establishments, a copy of ORS 30.670, 659.045(1) and ORS 659.010(14),[1] together with notice that anyone who believed that he or she had been discriminated against

---

[1] ORS 30.670 provides:

"All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin."

ORS 659.045(1) provides:

"(1) Any person claiming to be aggrieved by an alleged distinction, discrimination or restriction on account of race, religion, sex, marital status, color, national origin or age if the individual is 18 years of age or older made by any place of public accommodation as defined in ORS 30.675 or by any person acting on behalf of such place or in violation of ORS 30.685 or any person claiming to be aggrieved by a violation of ORS 345.240 or any person claiming to be aggrieved by a violation of ORS 659.033 may, by himself or his attorney, make, sign and file with the Commissioner of the Bureau of Labor and Industries a verified complaint in writing which shall state the name and address of the person, the place of accommodation or the vocational, professional trade school alleged to have committed the act complained of and which complaint shall set forth the particulars thereof. The complainant may be required to set forth in the complaint such other information as the commissioner may deem pertinent. A complaint filed pursuant to this section shall be filed no later than one year after the alleged distinction, discrimination or restriction."

ORS 659.010(14) provides: .

"(14) 'Unlawful practice' means any unlawful employment practice or any distinction, discrimination or restriction on account of race, religion, color, sex, marital status or national origin made by any place of public accommodation as defined in ORS 30.675, by any person acting on behalf of any such place or by any person aiding or abetting any such place or person in violation of ORS 30.685, or any violation of ORS 345.240, 659.033, 659.037, or rules adopted pursuant to subsection (1) of ORS 659.103, but does not include a refusal to furnish goods or services when the refusal is based on just cause."

by a place of public accommodation may notify the Oregon Bureau of Labor. Petitioner challenges both the award of damages and the order requiring him to post the above described notice. We affirm in part and reverse in part.

On September 18, 1976, the complainant, Vanessa Duncan, went with her companion, David Rogers, to the Keyhole Supper Club in Portland. Ms. Duncan is white and Mr. Rogers is black. Both were over 21 years of age at the time of the incident. In order to enter the club they, and all patrons, were required to produce proof of age. Rogers, who presented a driver's license and a Navy identification card to the security guard, was allowed to enter. Ms. Duncan was not. She offered four pieces of identification; all of the offered items contained her date of birth but none contained her picture. The security guard informed her that this proof was inadequate, and, on that basis, he refused to admit her.

Rogers and the complainant left the club without argument. However, after discussing the matter further in the club's parking lot, they decided to return to the club and confront the security guard. The guard continued to refuse to allow the complainant admission and an argument, in plain view of the other patrons, ensued. When the complainant asked to see the person in charge of the premises, she was told he was not present. After 25 minutes of argument, the security guard finally allowed the complainant to enter the club. According to the complainant, she was so upset over the episode that she and Rogers remained in the club for only 10 minutes.

The Commissioner found that the complainant was initially denied admittance to the club and treated in the manner described because of the race of her companion, David Rogers. As a result of this treatment, the Commissioner found that the complainant suffered serious and continuing mental anguish. Additionally, it was established that the treatment accorded the complainant by the security guard came about as a direct consequence of the club's standard

practice of discouraging the patronage of black persons and racially mixed couples by imposing a more rigid proof of age requirement upon such persons than that imposed upon white persons and couples.

The petitioner does not specifically challenge the finding of discrimination. He contends, however, that there is insufficient evidence to support the finding that the complainant was in any way injured by this discrimination. Alternatively, he argues that the complainant caused the injury to herself by returning to the club to speak with the security guard.

■ ■ Our scope of review is limited to whether or not the Commissioner's order is supported by substantial evidence. ORS 659.085, 183.482(8)(c). The Commissioner's finding of mental anguish, including anger, humiliation and frustration, was based upon the testimony of the complainant and Mr. Rogers, as well as the nature of the incident itself. While the evidence that Ms. Duncan was actually harmed is scant, it is sufficient to support the Commissioner's findings. The fact that the complainant returned to the club on her own initiative does not compel a contrary conclusion. She was entitled to protest the club's discriminatory act, and to attempt to persuade the management to let her in. The award of damages is affirmed.

■ Petitioner next challenges that portion of the Commissioner's order requiring him to post notices. His argument appears to be that this portion of the order goes beyond the power of the Commissioner, because there is no evidence demonstrating the necessity of the described notice. This court may remand an order of an administrative agency where it finds that the agency acted beyond the range of discretion delegated to it by law. ORS 183.482(8)(b)(A).

The Commissioner, after a consideration of all the evidence, has the authority to issue an appropriate cease and desist order against any respondent found to have engaged in an unlawful practice, as that term is defined in ORS 659.010(14).[2] ORS 659.060(3). A cease

---

[2] ORS 659.010(14), *supra, see* fn 1.

and desist order is defined by ORS 659.010(2) as follows:

> "(2) 'Cease and desist order' means an order signed by the commissioner, taking into account the subject matter of the complaint and the need to supervise compliance with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring the respondent to:
>
> "(a) Perform an act or series of acts designated therein and reasonably calculated to carry out the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, eliminate the effects of an unlawful practice found, and protect the rights of the complainant and other persons similarly situated;
>
> "(b) Take such action and submit such designated reports to the commissioner on the manner of compliance with other terms and conditions specified in the commissioner's order as may be required to assure compliance therewith; or
>
> "(c) Refrain from any action designated in the order which would jeopardize the rights of the complainant or other person similarly situated or frustrate the purpose of ORS 659.010 to 659.110 and 659.400 to 659.435."

In *School District No. 1 v. Nilsen,* 271 Or 461, 534 P2d 1135 (1975), the Supreme Court held that the Commissioner's power to issue supervisory orders is not unlimited. The court stated that

> "[i]t is our conclusion that the legislature did not intend to vest in the Commissioner completely unfettered discretion to the extent that the Commissioner could issue an order without some showing of necessity therefor." *Id.* at 495.

In *Nilsen,* the Commissioner had, among other things, ordered the school district to establish a liaison between the district and the Bureau of Labor to insure that the district's discriminatory policies were halted and the Commissioner's remedial order was followed. The liaison was empowered to post a copy of the Commissioner's order in all schools located in the district in question. The court deleted the liaison provision in its entirety, without discussion of any of its

parts, on the ground that the record was devoid of any evidence of the necessity of that provision.

This court in *Fred Meyer v. Bureau of Labor,* 39 Or App 253, 592 P2d 564 (1979), *rev den* 287 Or 129 (1979), discussed the appropriateness of requiring the posting of a notice in discrimination cases. In that case, Fred Meyer had been found guilty of discriminating against a black employee on the basis of race. The Commissioner ordered Fred Meyer to post a copy of its order in all of its Oregon stores. This court concluded that that portion of the order had no "apparent reasonable relationship to the accomplishment of statutory purposes based on unlawful employment practice in this case." *Id.* at 269. We held that:

> "They [the posting requirement included] cannot be justified as protection for similarly-situated persons because there is no finding that petitioner had discriminated other than against Hayes. The acts of discrimination by two nonmanagerial supervisors against Hayes, which the efforts of the assistant manager were insufficient to correct, are not of a nature or magnitude which would imply a discriminatory policy or pattern of practice on the part of petitioner. Nor does the order attempt to justify these remedies as reasonably necessary for assurance of future compliance. In short, there is no finding or reasoning in the order or evidence in the record which would support such finding or reasoning to indicate that the relatively punitive requirements imposed by the last two portions of the Commissioner's order are designed to advance the statutory purposes which are delegated to the Commissioner for enforcement." *Ibid.*

The purpose of the cease and desist order is to protect the rights of the complainant and other persons similarly situated. ORS 659.010(2). In this case, the Commissioner specifically found that the notice requirement was necessary to protect people like the complainant in light of the petitioner's standard practice of discouraging the patronage of racially mixed couples and black persons. There is evidence in the record to support the Commissioner's finding that such a practice existed.

The ordered remedial act, the posting of the notice, is related to a specific statutory purpose. It can be reasonably expected to accomplish this purpose. The need for the notice is demonstrated in the evidence and the Commissioner's findings. *Fred Meyer v. Bureau of Labor, supra,* 39 Or App at 269. We cannot say that the Commissioner abused her discretion in ordering the petitioner to post the described notice. We note, however, that the order applies to all of the petitioner's business establishments. There is no finding that a policy of discrimination existed at these other establishments, or even that any other such establishments existed. Therefore, this portion of the Commissioner's order requiring posting of other establishments must be deleted.

The petitioner's last claim is that the Commissioner erred in failing to take into consideration the fact that the complainant and Mr. Rogers returned to the club in the summer of 1978 and were admitted without trouble. Petitioner is in error: the Commissioner did consider this evidence. She did not find it persuasive. The weighing of such evidence is for the Commissioner, not for this court.

This case is remanded to the Commissioner of Labor for issuance of a new order consistent with this opinion.

Affirmed in part, reversed in part and remanded.