[No. 47539-3.   En Banc.   February 25, 1982.]

THE HUMAN RIGHTS COMMISSION, *Appellant,* v.
CHENEY SCHOOL DISTRICT NO. 30,
*Respondent.*

*Kenneth O. Eikenberry, Attorney General, Morton M. Tytler, Senior Assistant,* and *Michael Flynn, Assistant,* for appellant.

*Joseph J. Rekofke* and *Winston & Cashatt,* for respondent.

*Douglas N. Jewett, City Attorney, Donna Leong, Assistant,* and *Gary Locke,* amici curiae for appellant.

DORE, J.—The sole issue in the subject case is whether a hearing tribunal of the Washington State Human Rights Commission (hereinafter Commission) has authority to award compensation for humiliation and mental suffering caused by unlawful age discrimination. We hold it has no such authority.

## FACTS

Mary Spangenberg applied for a teaching position at Garden Springs School in the Cheney School District (hereinafter District) in 1977 when she was 40 years of age. The only requisite qualification for the job listed in the job bulletin was a valid Washington state teaching certificate. At the time, Spangenberg held a valid teaching certificate and had been employed by the District for 7 years. Although she was found qualified, she was not hired. One of the reasons for refusing her employment was that the District wanted a younger person for the position. The Dis-

trict's decision caused Spangenberg to suffer humiliation and mental anguish and grief.

She filed a complaint with the Commission and the case was heard by a hearing tribunal. The tribunal found that the District did not hire Spangenberg because of her age, and awarded her a judgment of $4,500 for humiliation and mental suffering.

The District appealed to the Superior Court which ruled that the Commission and/or its hearing tribunal have no authority to award damages for mental suffering and/or humiliation in any amount. However, the court did grant judgment for nominal damages in the amount of $1,000. The Commission appealed to this court, claiming it had authority to award damages for humiliation and mental suffering and asked that the $4,500 award against the District be reinstated. The District did not appeal the $1,000 award for nominal damages, presumably on the basis that it did not include damages for mental suffering.

The Washington Law Against Discrimination, when originally enacted in 1949, covered only discrimination in employment because of race, creed, color or national origin. Laws of 1949, ch. 183. Tribunals were authorized only to issue cease and desist orders. Laws of 1949, ch. 183, § 8. In 1955, the Law Against Discrimination was revised and reenacted. At that time, RCW 49.60.250 was enacted, authorizing the tribunal to issue

> an order requiring such respondent to cease and desist from such unfair practice and to take such affirmative action, including, (but not limited to) hiring, reinstatement or upgrading of employees, with or without back pay, an admission or restoration to full membership rights in any respondent organization, *or to take such other action* as, in the judgment of the tribunal, will effectuate the purposes of this chapter, . . .

(Italics ours.) The italicized language was added in 1957.

Pursuant to RCW 49.60.250 and the italicized language "or to take such other action," the Legislature granted the Commission the power to give hearing tribunals acting in

its behalf "general jurisdiction and power" to eliminate and prevent prohibited discrimination. Both parties agree that the Legislature did not *expressly* give such a tribunal the power to award damages for humiliation and mental suffering. However, appellant claims this power by inference under the statutory language of "or to take such other action".

Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself. *In re Lehman,* 93 Wn.2d 25, 604 P.2d 948 (1980); *Garrison v. State Nursing Bd.,* 87 Wn.2d 195, 550 P.2d 7 (1976). Ambiguous statutes such as the one in the present case, however, should be interpreted in a reasonable manner, and courts should strive to seek out the intent of the legislative body. *Odessa Trading Co. v. Federal Crop Ins. Corp.,* 6 Wn. App. 423, 493 P.2d 809 (1972). The primary role of this court in interpreting statutes is to determine the intent of the Legislature and to give effect to that intent. *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977). To this end, the statute must be read as a whole; intent is not to be determined by a single sentence (or, in this case, the single phrase "or to take such other action"). *State v. Fenter,* 89 Wn.2d 57, 569 P.2d 67 (1977).

To determine the intent of the Legislature regarding the meaning of the words "or to take such other action as" as set forth in RCW 49.60.250, one must examine the 1957 journals of the House and Senate. There is no mention of the authority of the Commission to set up a tribunal having the power to award damages for humiliation and mental suffering. However, in the 1977 session of the Legislature, to wit, on February 7, 1977, Senate Bill 2482 was introduced which, on page 17, suggested an amendment to RCW 49.60.250 which, in part, provided

(8) If, upon all the evidence, the ((tribunal)) administrative law judge finds that the respondent has engaged in any unfair practice ((it)) said judge shall state ((its)) the findings of fact and shall issue and file with the ((board)) commission and cause to be served on such

respondent an order requiring such respondent to cease and desist from such unfair practice and to take such affirmative action, including, (but not limited to) hiring, reinstatement or upgrading of employees, with or without back pay, an admission or restoration to full membership rights in any respondent organization, or to take such other action as, in the judgment of the ((tribunal)) administrative law judge, guided by policies and precedents of the commission, will effectuate the purposes of this chapter, and including a requirement for report of the matter on compliance.

The suggested amendatory matter set forth in the above paragraph of SB 2482 is underlined. If the administrative law judge was guided by policies and precedents of the Commission, he would presumably have legislative authority to order damages for humiliation and mental suffering, for this is appellant's current policy. The Senate bill was reported out of committee on May 4, 1977. The Senate Journal, 45th Legislature (1977), at 1457–59, reflects legislative intent as to whether the Commission or a hearing tribunal appointed by the Commission had the authority to assess damages for humiliation and mental suffering. There is no mention specifically regarding the authority to assess damages, but the dialogue reflects legislative intent to expand the powers and authority of the Commission and its tribunals only as "expressly" stated in the statute.[1]

---

[1] "Senator Donohue: 'Mr. President, Senator Francis, I have a concern also. On page 8, starting on line 13, that paragraph which talks about the cooperation and to act jointly and by division of labor with the United States, other states and political subdivisions of the state of Washington, and their respective human rights agencies, et cetera, and then the last sentence says: "The commission may perform services for such agencies and be reimbursed therefor." Would you explain to me exactly what that means? It sounds to me as though that they could act in any way they so desire, if the commission so desired, with other agencies, and require that those agencies reimburse them if they are billed for that service.

"'We have no idea what that is going to cost. We don't know who they are going to be billing or who they are going to be working with.'

"Senator Francis: 'Senator Donohue, in answer to your question, I will first point out that you read out loud the part that says, "carry out the purposes of this human rights law." I think that that subsection 7 would all be interpreted that

After considerable discussion of this measure on the Senate floor, SB 2482, as amended, was referred back to the Judiciary Committee with recommendation that it be referred back to the Senate at the next session of the Legislature. It has not surfaced since. The rejection of this bill by the Legislature implies that the Legislature did not want the subject tribunal to have the power to award damages for humiliation and mental suffering for age discrimination violations. As the Legislature rejected this request for expanded powers, municipalities or the Commission itself

---

they would be limited by that, the requirements of this statute. What we are talking about is, say a woman is denied employment and believes it is because of her sex. She goes to the EEOC, and that is a federal agency. The question is, are they going to be duplicating the efforts of the human rights commission, or are we going to cooperate? Does that answer satisfy you, Senator Donohue?'

"Senator Donohue: 'No.'

"Senator Francis: 'Did you hear any of it?'

"Senator Donohue: 'I heard enough to know that it didn't satisfy me.'

"Senator Francis: 'I would really like you to be listening since you asked me these questions, and I think that that should have satisfied you if you were listening. Let me go over it again. The federal EEOC covers a lot of the same ground our state human rights law does. There is no reason for them to duplicate investigations if they can work together within their respective statutes to investigate a particular allegation or complaint. That is all it is talking about is to give them a right to work together.'

" . . .

"POINT OF INQUIRY

"Senator Rasmussen: 'Mr. President, I would like to ask Senator Francis a question. Senator Francis, my concern, Senator Francis, is the administrative law judge and the fact that he can be removed by the chairman if anybody expresses prejudice against him, and I don't like that section of the bill. I am not very fond of administrative law judges anyway. It doesn't spell out the qualifications. They are not elected by anybody, but they build a case against you so that when you do *go before a regular court, why you are practically dead before you start.* I don't like that section. I kind of agree with those people that are—you probably ought to take another look, and if the judiciary committee has gone as far as it can in cleaning this bill up, they can send it up to state government, and we will work on it for another three years.'

"Senator Francis: 'Mr. President, I am not exactly sure what the question was. *The reason for changing it to administrative law judge was because it was felt* by some employers that a hearing tribunal of three persons who were members of the board was much too oriented towards enforcement, and that an administrative law judge would be more fair to them. So that is the reason for this change. I think that most of these changes for those who actually work in the field are regarded as highly desirable.'"

cannot change this rejection to approval by means of municipal ordinances and the Washington Administrative Code. The authorization of tribunals to award damages for humiliation and mental suffering for age discrimination is a substantive matter and cannot be granted under an agency's rulemaking power.

Mary Spangenberg, who suffered damages by humiliation and mental suffering caused by age discrimination, is not without a remedy. She can sue for damages under RCW 49.60.030 which specifically grants a civil remedy for anyone injured by an act of discrimination as follows:

> (2) Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees . . .

In *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 573 P.2d 389 (1978), the appellate court held that courts may award compensation for humiliation and mental suffering in a discrimination case. Consequently, there is no compelling need to vest a law tribunal with the power to award such damages.

WAC 162-08-061(2) provides in part:

> A court confines its judgment to the parties before it, and it seeks to resolve in a single action the entire dispute between them. *The commission was not designed to compete with the courts as a forum for the vindication of private rights; its task is to work for the public good of eliminating and preventing discrimination.* If the commission were obligated to dispose of every contention between a complainant and respondent arising out of the alleged discrimination, then its resources would be diverted from this central task. RCW 49.60.020 preserves the civil and criminal remedies of a person who has filed a complaint under the law against discrimination, and RCW 49.60.030 authorizes suits directly in court, in order to free the commission to work for the remedy best designed to eliminate and prevent discrimination.

(Italics ours.)

■ The above rule puts the enforcement of civil rights into perspective. The Commission was established by the Legislature as a "fire department" designated to take immediate action in the event of an emergency in the violation of civil rights, without fear of waiver of other civil or criminal remedies. On the other hand, the courts supply the long–term stability and reliability for enforcement of discrimination statutes that are violated, and for the awarding of damages. *See Randall v. Cowlitz Amusements, Inc.*, 194 Wash. 82, 85, 76 P.2d 1017 (1938), wherein the court stated:

> Compensation for damages on account of injuries of this nature is, of course, incapable of yardstick measurement. It is impossible to lay down any definite rule for measuring such damages, and the amount of recovery must of necessity be left to the sound discretion and judgment of the jury, . . .

■ The power of an administrative agency was recently considered at the appellate court level in *State v. Munson*, 23 Wn. App. 522, 597 P.2d 440 (1979). There, the court set out the rule on page 524 of the opinion, stating that "Administrative agencies are creatures of the legislature without inherent or common–law powers and may exercise only those powers conferred either expressly or by necessary implication". By enacting RCW 49.60.120, the Legislature intended that the Commission, as distinguished from a hearing tribunal, should identify discriminatory practices and endeavor to eliminate them by means other than adversary proceedings. That statute provides in part:

> The board shall have the functions, powers and duties:
> . . .
> (3) To adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this chapter, and the policies and practices of the board in connection therewith.
> (4) To receive, investigate, and pass upon complaints alleging unfair practices as defined in this chapter because of sex, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap.

■ Nowhere in that statute is the Commission granted

power to take affirmative remedial action concerning an unfair practice. The only statute that speaks to this is RCW 49.60.240, which calls for investigation by the Commission staff of complaints alleging discrimination in order to determine whether reasonable cause exists for believing that an unfair practice has been committed. It provides, *inter alia*:

> If the finding is made that there is reasonable cause for believing that an unfair practice has been or is being committed, the board's staff shall immediately endeavor to eliminate the unfair practice by *conference, conciliation and persuasion.*

(Italics ours.)

If the Commission is unable to resolve the complaint through the means specified in the statute, it is presented to a hearing tribunal for disposition under RCW 49.60.250.

While the Commission may have somewhat broad power concerning the identification of unfair practices, it has been provided with limited power to resolve them. The results of discrimination are not nearly as varied as the causes. For this reason, the Legislature enumerated the types of remedies it considered appropriate and granted a hearing tribunal, rather than the Commission, the power to effectuate them. Conspicuously absent is any mention of damages, other than an award for back pay. It seems apparent that these are allowed since they are easily ascertainable by a tribunal involving essentially a matter of computation.

The enumeration of remedies in RCW 49.60.250 is not consistent with the Commission's argument that the Legislature did not designate the remedies that are appropriate to eliminate and prevent discrimination, but gave the Commission the authority to do so. It is apparent that the Legislature gave specific guidance concerning what it felt were appropriate remedies that could be ordered by a hearing tribunal. While RCW 49.60.250 gives a tribunal the power to take "other action" to effectuate the chapter's purpose, it is to be noted that "such other action" is qualified by the phrase "and including a requirement for report of the mat-

ter on compliance". It is submitted that requiring reports is more indicative of the action contemplated by the Legislature, rather than an award of general damages for mental suffering and humiliation. The applicable general rule that an administrative agency may exercise only the power conferred upon it either expressly or by necessary implication applies to the case at bar. The Commission has not either expressly or by implication been given the power to award general damages for humiliation and mental suffering.

RCW 49.60.225 lends further legislative intent that the Legislature had not granted authority to award damages for humiliation and mental suffering for civil rights damages, by providing as follows:

> When a determination has been made under RCW 49.60.250 that an unfair practice involving real property has been committed, the board or its successor may, in addition to other relief authorized by RCW 49.60.250, award the complainant up to one thousand dollars for loss of the right secured by RCW 49.60.010, 49.60.030, 49.60.040, and 49.60.222 through 49.60.226, as now or hereafter amended, to be free from discrimination in real property transactions because of sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap. Enforcement of the order and appeal therefrom by the complainant or respondent shall be made as provided in RCW 49.60.260 and 49.60.270.

Under this statute, in the field of unfair practices involving real estate, the Legislature specifically granted the power to the Commission to award damages up to the sum of $1,000 which presumably includes all types of damages including those for humiliation and mental suffering. If the Commission already had such authority under the language of the 1957 statute providing "or to take such other action as", there would have been no reason to specifically provide for it in RCW 49.60.225 and limit it to $1,000.

It is unrealistic to believe that the Legislature, 23 years earlier, would have granted to a lay tribunal more power than to a court concerning general damages for humiliation

and mental suffering.

Courts in Pennsylvania,[2] Ohio,[3] Iowa[4] and the District of Columbia[5] have held that an agency similar to the Washington State Human Rights Commission may not award compensatory damages for mental suffering. In *Pennsylvania Human Relations Comm'n v. Zamantakis*, 478 Pa. 454, 458, 387 A.2d 70 (1978), the court proffered the following reasons in its decision not to allow an award of mental suffering damages: (1) there was no specific legislative language authorizing the award, (2) the administrative hearing had none of the "formal trappings, evidentiary protections, and strict procedures of a court of law", (3) commission members were not necessarily trained in law, (4) commission employers were investigators, prosecutors, judges and jury, thus asserting an "unduly heavy force on the side of the proponents of damages", (5) under the adversary system of justice, damages were traditionally a matter for courts of law, and (6) the Legislature did not clearly authorize the grant of power.

The Commission cites two cases from Massachusetts[6] in support of its contention that case law preponderates in favor of administrative agencies to make such awards. These cases are distinguishable on the basis that the Massachusetts Commission Against Discrimination has statutory authority to award damages not exceeding $1,000

---

[2]*Pennsylvania Human Relations Comm'n v. Zamantakis*, 478 Pa. 454, 387 A.2d 70 (1978); *Corder v. State Civil Serv. Comm'n*, 2 Pa. Commw. 462, 279 A.2d 368 (1971).

[3]*Ohio Civil Rights Comm'n v. Lysyj*, 38 Ohio St. 2d 217, 313 N.E.2d 3 (1974), *cert. denied*, 419 U.S. 1108 (1975).

[4]*Iron Workers Local 67 v. Hart*, 191 N.W.2d 758 (Iowa 1971).

[5]*Mendota Apartments v. District of Columbia Comm'n on Human Rights*, 315 A.2d 832 (D.C. 1974).

[6]*Bournewood Hosp., Inc. v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 358 N.E.2d 235 (1976); *Massachusetts Comm'n Against Discrimination v. Franzaroli*, 357 Mass. 112, 256 N.E.2d 311 (1970).

incurred as the result of an unlawful practice or violation without any specificity concerning the elements of damages covered.

A case (cited by the Commission) dealing with an award of damages by the New Jersey Division on Civil Rights for mental suffering is *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 421, 301 A.2d 754 (1973). There the court held that a nominal amount could be awarded for mental suffering. The reason for approving such award was a provision in their statute (there is no Washington counterpart) as follows:

> *the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.* Nothing herein contained shall bar, exclude, or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination.

(Italics ours.) Any relief sought in a proceeding before the New Jersey Division is exclusive, and a final determination in such proceeding precludes any further relief which is sought for the same grievance. This is contrary to applicable Washington law which permits a complainant to seek relief from the Commission and/or tribunal and yet maintain a civil action, as provided in RCW 49.60.030(2).

The Commission also cites *McCabe v. Johnson Cy. Bd. of Cy. Comm'rs*, 5 Kan. App. 2d 232, 615 P.2d 780 (1980), which is inapplicable. Although the Kansas Commission on Civil Rights did award $5,000 damages, these were recovered by the employee as the result of retaliatory discharge. The Kansas Commission expressly found that no probable cause existed concerning the discrimination charge.

The Oregon Court of Appeals, in *Williams v. Joyce*, 4 Or. App. 482, 479 P.2d 513 (1971), reasoned that the award of damages to compensate for a victim's humiliation is an act reasonably calculated to eliminate the effects of discrimina-

tion.[7] These cases are distinguishable on the basis that the legislative history regarding Or. Rev. Stat. § 659.010(2)(a) much more favorably implies the grant of authority, and allows for a much broader application than is allowable in Washington.

CONCLUSION

The authority for a tribunal to award damages for humiliation and mental suffering is not provided for, either expressly or by inference. A person who has suffered humiliation caused by discrimination may seek relief through a civil action as provided for under RCW 49.60.030. For these reasons, we hold that a hearing tribunal of the Washington State Human Rights Commission has no authority to award compensation for humiliation and mental suffering caused by unlawful age discrimination. The judgment in favor of Spangenberg for $1,000 in nominal damages is hereby affirmed, because it was not challenged on this appeal.

DOLLIVER, WILLIAMS, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ROSELLINI, J. (concurring)—I do not find in the legislative history described in the majority opinion any indication of the Legislature's intent with respect to the award of damages. Furthermore, I disagree with an approach to statutory interpretation which looks first to legislative history, and only later to the language of the statute, where the intent of the law ought to be revealed. I do agree, however, that the language itself shows no intent to give the administrative agency the power of determining and awarding damages, except as specifically provided in the statutes. There is no authority conferred in RCW 49.60.250 to award

---

[7]*See also School Dist. 1 v. Nilsen*, 17 Or. App. 601, 523 P.2d 1041 (1974), *modified*, 271 Or. 461, 534 P.2d 1135 (1975); *Fred Meyer, Inc. v. Bureau of Labor*, 39 Or. App. 253, 592 P.2d 564 (1979); *Gaudry v. Bureau of Labor & Indus.*, 48 Or. App. 589, 617 P.2d 668 (1980).

damages for humiliation and mental suffering.

BRACHTENBACH, C.J., and UTTER, J., concur with ROSELLINI, J.

Reconsideration denied May 20, 1982.